UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 08-22679-CIV-GOLD/MCALILEY

UNITED STATES OF AMERICA,

    Plaintiff,
v.

HIALEAH HOUSING AUTHORITY,

    Defendant.
_____/

ORDER GRANTING DEFENDANT HIALEAH HOUSING AUTHORITY'S
MOTION FOR SUMMARY JUDGMENT; CLOSING CASE

THIS CAUSE is before the Court upon Defendant Hialeah Housing Authority's ("HHA") Motion for Summary Judgment **[DE 94]**, filed on November 23, 2009.[1] In its Complaint, the United States of America ("Plaintiff") alleges violations of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq.*, due to HHA's failure to provide Mr. Manuel Rodriguez with a reasonable accommodation for an alleged disability. Plaintiff filed a Response to HHA's Motion **[DE 94]** on January 22, 2010, and HHA filed a Reply **[DE 132]** on February 8, 2010. Oral argument on the Motion was held on March 12, 2009. I have reviewed the extensive pleadings filed by the parties, the record and the applicable law.

---

[1] The following Motions in Limine are also pending before the Court: Defendant Hialeah Housing's Motion in Limine to Exclude Physicians, Medial Providers, Medical Records, and New Damage Claims Improperly Disclosed in Plaintiff's Supplemental Response to Interrogatories [DE 92]; Defendant's Motion in Limine to Exclude Plaintiff's Medical Expert Report by Hialeah Housing Authority [DE 134]; Defendant's Motion in Limine to Exclude Plaintiff's Architectural Expert's Report and Testimony by Hialeah Housing Authority [DE 135]. As shown below, these Motions have no bearing on my analysis, and, thus, they are denied as moot.

For the reasons set forth below, Defendant's Motion is granted.

I.     **Background**[2]

Upon review of Defendant's Statement of Undisputed Facts, the Plaintiff's Statement of Facts in Response, and the evidentiary materials offered by both sides, the following facts relevant to the disposition of Defendant's Motion are undisputed:[3]

Mr. Miguel Rodriguez ("Mr. Rodriguez"), his spouse Mrs. Lazara Rodriguez ("Mrs. Rodriguez"), and their children (collectively the "Rodriguez Family") were public housing tenants of HHA from January 6, 1995 through August 31, 2005.[4] (Pl. Statement, ¶ 1). On or about May 8, 2001, Mr. Rodriguez was involved in a work related accident while employed at Britt Laminate, Inc. as a forklift operator. (Def. Statement, ¶ 5). Mr. Rodriguez

---

[2] In the Southern District of Florida, a party moving for summary judgment must submit a statement of undisputed facts. S.D. Fla. L.R. 7.5. If necessary, the non-moving party may file a concise statement of the material facts as to which it is contended there exists a genuine issue to be tried. *Id.* Each disputed and undisputed fact must be supported by specific evidence in the record, such as depositions, answers to interrogatories, admissions, and affidavits on file with the Court. *Id.* All facts set forth in the movant's statement which are supported by evidence in the record are deemed admitted unless controverted by the non-moving party. *Id.* Defendant filed a Statement of Undisputed Facts [DE 95] ("Def. Statement"), Plaintiff has filed its Statement of Material Facts in Opposition to Defendant's Statement [DE 125] ("Pl. Statement").

[3] Plaintiff disputes many of the facts set forth by Defendant. However, the disputed facts are not material to the issues raised in Defendant's motion for summary judgment.

[4] Throughout their tenancy, the Rodriguez Family members were tenants in possession of a HHA public housing unit located at Project 16 at 6329 West 24th Avenue, Apartment #202, Hialeah, Florida 33016 ("Subject Premises"). (Def Statement, ¶ 2-3). The Subject Premises is located on the second floor of Project 16. (*Id.*). In order to enter and exit the Subject Premises, individuals such as Mr. Rodriguez were required to walk up and down a flight of stairs because Project 16 does not have an elevator. (*Id.*).

tripped and fell on a pallet and sustained injuries, including right shoulder pain, ruptured rotator cuff, left shoulder pain, right arm pain and numbness, and cervical pain.[5] (*Id.*). As a result of this accident, on June 3, 2003, Mr. Rodriguez filed a workers compensation claim and eventually received a net settlement of $66,368.00. (*Id.*). Subsequently, Mr. Rodriguez applied for and received monthly social security disability benefits due to his work related injuries. (*Id.*, ¶ 6)

During their tenancy at Project 16, the Rodriguez Family members were neighbors with the Amparo Family and the Perez Family. (*Id.*, ¶ 4). Throughout the 2004 calendar year, the Hialeah Police Department ("Hialeah PD") was dispatched to Project 16 on numerous occasions as a result of various altercations between members of the Rodriguez and Amparo families. (*Id.*, ¶ 8) . As a result of the dispute between the Rodriguez, Amparo, and Perez families HAA Area Supervisor Mr. Joel Bonilla ("Bonilla") conducted an investigation surrounding the families' disruptive behavior at Project 16, including scheduling meetings with all three families in an effort to discuss and resolve their issues. (*Id.*, ¶ 9). Bonilla also reviewed the Hialeah PD reports associated with the families' altercations and subsequently contacted and spoke with the responding officers. (*Id.*). Following his investigation, Bonilla was fearful that the harassment between the families could potentially escalate to physical harm. (*Id.*). Thus, HHA made the decision to terminate the tenancies of all three families. (*Id.*).

Thereafter, on or about January 3, 2005, HHA served the three families with thirty

---

[5] Although Mr. Rodriguez testified that he injured his back in the May 8, 2001 workers compensation accident, Mr. Rodriguez's petition for benefits does not indicate that he sustained any injuries to his back. (Def. Statement, ¶ 5 n. 6).

day notices.[6] (*Id.*, ¶ 10).  Upon receipt of the thirty day notices, the families requested informal hearings to contest their respective lease terminations. (*Id.*).  Ms. Chabela Aneiros ("Aneiros") was appointed by HHA as the informal hearing officer to preside over the matters associated with the termination of the tenancies. (*Id.*).

On January 20, 2005, Mr. and Mrs. Rodriguez appeared before Bonilla and Aneiros for the Rodriguez Family's informal hearing. (*Id.*, ¶ 13) .  At the hearing, HHA sought to terminate the Rodriguez Family's tenancy because they disturbed the peaceful enjoyment of the Project 16 tenants. (*Id.*). Bonilla presented evidence of the "fights" between the Rodriguez, Amparo, and Perez Families. (*Id.*). In response, Mr. and Mrs. Rodriguez presented their side of the story and denied any involvement in the aforementioned "fights" with the Amparo Family.  They further claimed that the "fights" were initiated by the Amparo Family. (*Id.*).   During the hearing, in lieu of terminating the Rodriguez Family's public housing tenancy, Aneiros suggested that they agree to a transfer from Project 16 to a vacant unit at Hoffman Gardens. (*Id.*, ¶ 15).  Before the conclusion of the hearing and without viewing the unit, Mr. Rodriguez executed a transfer agreement (the "Transfer Agreement") acknowledging his acceptance of the unit at Hoffman Gardens. (*Id.*, ¶ 17). Moreover, according to Plaintiff, Mr. Rodriguez provided Aneiros with documentation

---

[6] The thirty day notices put the families on notice that they had violated provisions of the HHA Lease Section 7 and (j), "[b]y failing to act and to cause household members, guests, visitors, and persons under tenant's control to act in a manner which will not disturb other project residents' peaceful enjoyment of their accommodation and will be conductive to maintaining the development in a decent, safe and sanitary condition." [DE 97-20-22].

"showing that he was sick" at the January 20, 2005 informal hearing.[7] (Pl. Statement, ¶ 13; Rodriguez Dep., p.166:1-6, 1-20).  Notably, however, the evidence of record shows that any such documentation did not indicate that due to a hip and back condition Mr. Rodriguez was limited in his ability to climb stairs.[8]

After accepting transfer, Mr. Rodriguez viewed the unit at Hoffman Gardens, and learned that the unit was not clean, not painted, not air conditioned, and the kitchen cabinets and stairs were in poor condition.[9]  (Def. Statement, ¶ 18) . On January 21, 2005, Mrs. Rodriguez wrote a letter to Aneiros rejecting the proposed transfer to Hoffman Gardens.  (Pl. Statement, ¶ 19-20).  The letter stated, in relevant part:

> "We want to appeal to the decision about the transfer, because we did not realize that we did not see the conditions of the place first ... There is no bathroom downstairs and [Mr. Rodriguez] and I had surgery, we cannot go upstairs each time we need to use the bathroom."

---

[7] To support this contention Plaintiff points to Mr. Rodriguez testimony at his deposition stating that he provided Aneiros with documentation "showing that he was sick". (Pl. Statement, ¶ 13; Rodriguez Dep., p.166:1-6, 1-20).  Thus, deriving all inferences in favor of the non-movant as I am required to do so at this juncture, I will assume that Mr. Rodriguez did so for purposes of my analysis. As noted above however, Plaintiff's assertion in this regard is insufficient to establish an issue of material fact because the uncontroverted record shows that any such documentation did not show that due to a hip and back condition Mr. Rodriguez was limited in his ability to climb stairs.

[8] The Court's independent review of the extensive record reveals that there is no medical documentation whatsoever to support the contention that in 2005 Mr. Rodriguez suffered from a hip and back condition that affected his ability to traverse stairs.

[9] Mr. Rodriguez testified he would not move there due to these conditions. (Rodriguez Dep. I 40:12-15).  Mrs. Rodriguez also testified that she was "horrified" when she saw the condition of the Hoffman Gardens unit. (L. Rodriguez Dep. 59:4-25).

[DE 97-27, p. 3]. HHA did not respond to Mrs. Rodriguez's January 21, 2005 letter.[10] (Pl. Statement, ¶ 20). Instead, on January 24, 2005, Aneiros sent a letter advising Mr. Rodriguez that the decision to terminate his public housing tenancy was upheld. (Def. Statement, ¶ 22). Aneiros also advised the Rodriguez Family that they had a right to appeal the decision by requesting a formal hearing in writing within ten days. (*Id.*). Additionally, on January 28, 2005, HHA issued a seven day notice to cure directed to Mr. Rodriguez. (*Id.*). The notice to cure placed Mr. Rodriguez on notice that he was in breach of the Transfer Agreement and in violation of Section 12 of his lease agreement. (*Id.*).

Thereafter, on January 31, 2005, Mr. Chad J. Schatzle, Esq. ("Schatzle") sent a letter of representation to HHA advising that he was counsel for Mr. Rodriguez. (*Id.*, ¶ 23). Schatzle advised HHA that Mr. Rodriguez was requesting a formal hearing. (*Id.*). On February 9, 2005, HHA sent a certified letter advising Mr. Rodriguez that the formal hearing was scheduled for March 9, 2005 at 9:00 am.[11] (*Id.*). Mr. Rodriguez failed to attend the formal hearing, and on March 11, 2005 HHA mailed a certified letter to Mr. Rodriguez advising him of his failure to attend. (*Id.*, ¶ 24).[12] As a result of Mr. Rodriguez's failure to

---

[10] The record does not clearly reflect whether the letter was read by HHA employees, or what action, if any, HHA took in response to this letter. (*See* Def. Statement ¶ 19-20; Pl. Statement ¶ 19-20).

[11] It is undisputed that HHA did not notify Schatzel of the formal hearing date. [Rodriguez Dep. 99:13-14; 103: 14-16].

[12] Plaintiff's claim that the March 11, 2005 was received by regular mail as opposed to certified mail is unsupported by the record evidence. [*See* DE 97-35].

appear, the decision to terminate the Rodriguez Family's tenancy was upheld.[13] (*Id.*)

On May 4, 2005, HHA filed its Complaint for Eviction and Summary Removal of Tenant against the Rodriguez Family (the "Eviction Matter."). (*Id.*, ¶ 26). On or about May 17, 2005, Schatzle filed an answer, affirmative defenses, and motion to dismiss on behalf of the Rodrigueses. (*Id.*, ¶ 27). Mr. Rodriguez claimed in his fourth affirmative defense that he was disabled due to hip and back problems and could not constantly go up and downstairs to use a bathroom. (*Id.*). Mr. Rodriguez further alleged that HHA was advised of his disability in his January 21, 2005 letter and that HHA failed to provide a reasonable accommodation for his disability. (*Id.*).

On June 30, 2005, the parties attended a court ordered mediation in the eviction matter. (*Id.*, ¶ 28). At the mediation, Bonilla advised Schatzle to provide HHA with medical documentation to support Mr. Rodriguez's alleged disability and his request for a reasonable accommodation. (*Id.*). Bonilla stated that in the event adequate documentation was provided, HHA would place the Rodriguez Family on a waiting list for an accessible unit. (*Id.*, ¶ 29). Mr. Rodriguez testified during his deposition that medical documentation was provided to HHA at the mediation. However, the record is unclear as to what specifically was provided.[14] At the conclusion of the mediation, Mr. Rodriguez made the

---

[13] Mr. Rodriguez did not appeal the decision to uphold the termination of his tenancy on the basis that he did not receive proper notice of the informal hearing. [*See* DE 97 4, p. 110:1-8].

[14] I note that there is no evidence of record supporting Plaintiff's assertion that "Rodriguez presented [the letter dated June 10, 2005] from Dr. Nunez regarding his medical condition and diagnosis" at the June 30, 2005 mediation. [*See* Pl. Statement, ¶ 28]. Indeed, the citation Plaintiff points to in support of this fact is Dr. Hernaldo M. Nunez's ("Dr. Nunez") affidavit which is completely devoid of any reference to the June 30, 2005 mediation. [*See*

decision to voluntarily abandon his public housing tenancy without further requests. (*Id.*). A settlement was reached wherein HHA agreed to dismiss the eviction claim and allow the Rodriguez Family to remain at the Subject Premises until August 31, 2005. (*Id.*). Pursuant to the terms of the settlement, the Rodriguez Family did not vacate the Subject Premises until the agreed upon date – August 31, 2005. (Id).

On or about June 28, 2006, Mr. Rodriguez filed a complaint with the Department of Housing and Urban Development ("HUD") alleging that HHA denied his request to reasonably accommodate him due to a disability to his hip and back. (*Id.*, ¶ 31). Following its investigation, HUD determined that there was reasonable cause to believe that HHA discriminated against Mr. Rodriguez.[15] Based on HUD's determination, Plaintiff the United States of America filed the instant action pursuant to 42 U.S.C. § 3612(o) of the FHA on behalf of the Rodriguez Family for HHA's failure to provide Mr. Rodriguez with a reasonable accommodation for an alleged disability due to hip and back problems.[16] [*See*

---

DE 127-15]. Mr. Rodriguez's only testimony in this regard, is that all of his medical documentation was provided to HHA before he moved out of the Subject Premises, but he could not recall when or to whom it was given. (*See* Rodriguez Dep. I 97:1-12; 107:6-14). Moreover, as I will explain in detail below, even if I were to assume that this letter was provided at the June 30, 2005 mediation, it is insufficient for purposes of establishing Plaintiff's prima facie case under the FHA.

[15] During the course of its investigation, HUD did not obtain testimony from Mr. Rodriguez's treating physicians under oath. Accordingly, Plaintiff argues that any reference to statements made by Dr. Nunez or Mr. Rodriguez's physical therapist to HUD investigators are inadmissable hearsay. Nevertheless, the contents of the report are immaterial to my analysis.

[16] In attempting to demonstrate that Mr. Rodriguez is disabled, Plaintiff relies on evaluations he underwent and diagnoses he received years after the events giving rise to this case. Given that the relevant time period is when the alleged discrimination occurred – the year 2005 – to the extent Plaintiff relies on any such record evidence, it will be disregarded.

DE 1].

## II.   Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment when the pleadings and supporting materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it hinges on the substantive law at issue and it might affect the outcome of the nonmoving party's claim.  *See id.*  ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").  The court's focus in reviewing a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 252; *Bishop v. Birmingham Police Dep't*, 361 F.3d 607, 609 (11th Cir. 2004).

The moving party bears the initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact.  *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir. 1997).  Once the moving party satisfies this burden, the burden shifts to the party opposing the motion to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial."  *Celotex v. Catrett,* 477 U.S. 317, 324 (1986).  A factual

---

*See Hawn v. Shoreline Towers Phase I Condominium Ass'n, Inc.*, 2009 WL 691378 at *4 n. 5. (collecting cases). Plaintiff also relies heavily on its architectural expert, Mark J. Mazz ("Mazz") in support of its argument that Mr. Rodriguez was disabled and that HHA failed to accommodate him.  However, Plaintiff's reliance on Mazz is unavailing as Hoffman Gardens was offered to Mr. Rodriguez in place of a for-cause eviction as opposed to being offered as a reasonable accommodation to a disability. [*See* Def. Statement, ¶ 15]. Thus, any discussion of the unit's lack of accessibility is irrelevant to the issues before me, and thus, will not be considered.

dispute is genuine only if the evidence is such that a reasonable fact finder could return a verdict for the non-moving party. *Anderson,* 477 U.S. at 248; *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001).

In assessing whether the movant has met its burden, the court should view the evidence in the light most favorable to the party opposing the motion and should resolve all reasonable doubts about the facts in favor of the non-moving party. *Denney,* 247 F.3d at 1181. In determining whether to grant summary judgment, the court must remember that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255.

## III.   Discussion

A municipality commits discrimination under section 3604(f)(3)(B) of the FHA if it "fails to make reasonable accommodations in rules, policies, practices, or services, that may be necessary to afford a disabled person equal opportunity to use and enjoy a dwelling."[17] 42 U.S.C. § 3604(f)(3)(B). " 'Whether a requested accommodation is required by law is 'highly fact-specific, requiring case-by-case determination.' " *See Loren v. Sasser*, 309 F.3d 1296, 1302 (11th Cir.2002) (quoting *Groner v. Golden Gate Gardens Apartments*, 250 F.3d 1039, 1044 (6th Cir.2001)). To prevail, a plaintiff must show that: (1) he is disabled or handicapped within the meaning of the FHA, and that the defendants knew or

---

[17] A dwelling is defined as "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families, and any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure, or portion thereof." 42 U.S.C. § 3602(b).

should have known of that fact; (2) that the defendants knew that an accommodation was *necessary* to afford him equal opportunity to use and enjoy the dwelling; (3) such an accommodation is reasonable; and (4) the defendant refused to make the requested accommodation. *See Hawn v. Shoreline Towers Phase I Condominium Ass'n, Inc.*, 2009 WL 691378, at *4 (N.D. Fla. 2009), *aff'd, Hawn v. Shoreline Towers Phase 1 Condominium Ass'n, Inc.*, 347 Fed. Appx. 464 (11th Cir. 2009); *See generally Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1218-19 (11th Cir.2008).

An individual is handicapped, for the purposes of the FHA, if he has (1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of such impairment, or (3) is regarded as having such an impairment. *See Loren*, 309 F.3d at 1302; 42 U.S.C. § 3602(h) (quotations omitted). However, a defendant "cannot be liable for refusing to grant a reasonable and necessary accommodation if [it] never knew the accommodation was in fact necessary." *See Hawn v. Shoreline Towers Phase 1 Condominium Ass'n, Inc.*, 347 Fed. Appx. 464 at 467 (citing *Schwarz*, 544 F.3d at 1219 ("In other words, the City cannot be liable for refusing to grant a reasonable and necessary accommodation if the City never knew the accommodation was in fact necessary.")). Indeed, "other circuits have held that ... the defendant must know or reasonably be expected to know of the existence of both the handicap and the necessity of the accommodation." *Id.* Moreover, "the existence of such handicap must be examined on a case-by-case basis." *Jeffrey O. v. City of Boca Raton*, 511 F.Supp.2d 1339, 1346 (S.D. Fla. 2007) (citing *Albertson's Inc. v. Kirkingburg*, 527 U.S. 555, 566, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999)).

For purposes of my analysis, *Hawn v. Shoreline Towers Phase I Condominium*

*Ass'n, Inc.*, 2009 WL 691378, at *4 (N.D. Fla. 2009), *aff'd, Hawn v. Shoreline Towers Phase 1 Condominium Ass'n, Inc.*, 347 Fed. Appx. 464 (11th Cir. 2009), a recent Northern District of Florida Court case, is particularly instructive. In *Hawn*, plaintiff sought an exception from a condominium project's no pet policy by asserting his rights under the FHA. The plaintiff contended that he was disabled under the FHA and that he should be allowed to have a service dog due to his physical and psychological disabilities. In support of his request, the plaintiff had two medical providers submit letters to the condominium's board on his behalf. In one letter, a psychologist opined that "the plaintiff suffered from severe panic attacks; was unable to properly cope with anxiety and stress; and was particularly vulnerable while residing at his home/condo due to past occurrences on that property." *Id.* at *2. The psychiatrist further noted that he was thus "prescribing a service animal." *Id.* at *2. A chiropractor also submitted correspondence on the plaintiff's behalf stating that he was familiar with the plaintiff's history and the functional limitations imposed by his disability; that the plaintiff had certain limitations regarding mobility; and that a support animal would assist the plaintiff with his disability. *Id.* at *2. After receiving these letters, the defendants requested additional information to substantiate the plaintiff's alleged disabilities and further to assess how the requested pet was a necessary accommodation, but none was provided. *Id.* Instead, the plaintiff commenced an action before the Florida Commission on Human Relations ("FCHR"). Following an investigation, the FCHR concluded that there was cause to believe that the defendants had discriminated against the plaintiff by not providing a reasonable accommodation. The plaintiff then filed an action alleging violations of the FHA and the Florida Fair Housing Act ("FFHA") Fla. Stat.

§ 760.20 *et seq.*[18]

For purposes of its summary judgment analysis, the district court in *Hawn* assumed that there was enough evidence that the plaintiff was handicapped under the FHA. *Id.* at *4. Nevertheless, the district court held that even assuming the plaintiff had sufficiently established that he was disabled, no reasonable jury could conclude that the board *knew or should have known* the plaintiff was handicapped when it made the decision to deny the plaintiff's request. *Id.* Thus, the plaintiff was not entitled to a reasonable accommodation under the FHA. *Id.* at *4. In support of its conclusion, the district court noted that the medical evidence in the record of the plaintiff's condition at the relevant time consisted solely of two letters that did not indicate whether his limitations and difficulties were "temporary or permanent"; "nor did they indicate that [the dog] was actually necessary"; nor did they "describe the providers' individual qualifications, background, or treatment history with the plaintiff." *Id.* at *4-5. While the district court noted that "if a landlord is skeptical of a tenant's alleged disability ... it is incumbent upon the landlord to request documentation or open a dialogue," the court concluded that based on the plaintiff's failure to comply with the defendant's request for information substantiating his disability, to the extent he was disabled and needed the accommodation, the defendants could not be held responsible for being unaware of those facts. *Id.* at *6 (citing *Jankowski Lee & Associates v. Cisneros*, 91 F.3d 891, 895 (7th Cir.1996)). As additional grounds for granting summary judgment in favor of the defendants, the court in *Hawn* further held that the plaintiff failed to

---

[18] I note that while the plaintiff in *Hawn* brought claims under both the FHA and the FFHA, because these statutes contain essentially identical provisions, and the same facts were implicated for both claims, the district court analyzed plaintiff's claims under both statutes simultaneously. *Hawn*, 2009 WL 691378 at *3.

"adequately show[] that the [defendants] knew the requested accommodation was *necessary* to afford him equal opportunity to use and enjoy the dwelling."[19]  *Id.* at *6 (emphasis in original).

The first question is, therefore, whether a reasonable jury could conclude that Mr. Rodriguez is disabled under the FHA and that HHA knew or should have known of this fact. *See Hawn v. Shoreline Towers Phase I Condominium Ass'n, Inc.*, 2009 WL 691378 at *4. In the instant case, Plaintiff argues that Mr. Rodriguez suffers from a number of impairments which substantially limit his ability to go up and down stairs.  In support of this argument, Plaintiff spends a great deal of time establishing that Mr. Rodriguez is *currently* disabled. [See DE 129, pp. 4-5].  More specifically, Plaintiff argues that its expert Dr. Hochman opined, based on a December 11, 2009 medical examination of Mr. Rodriguez, that he is disabled and that the symptoms associated with his disability "increase walking down stairs."[20]  [DE 129, p. 5; Hochman Report at 1].  In deciding whether Mr. Rodriguez

---

[19] In affirming the court in *Hawn*, the Eleventh Circuit agreed that the plaintiff's evidence, including the two doctors' letters, was insufficient to "to create any genuine issues of material fact as to [Defendant's] knowledge of Hawn's disability and the necessity of an accommodation[.]" *Hawn v. Shoreline Towers Phase 1 Condominium Ass'n, Inc.*, 347 Fed. Appx. 464, 468 (11th Cir. 2009).  In support of its conclusion, the Eleventh Circuit noted that the doctors' letters "included unclear explanations as to the nature and extent of [plaintiff's] disability." *Id.*  The Court further noted that "Hawn's refusal to comply with subsequent requests for reasonable documentation prevented [Defendant] from conducting a meaningful review of Hawn's application and thereby [Defendant] could not have actually known of Hawn's disability and the necessity of the animal." *Id.*

[20] Plaintiff further points to the fact that Mr. Rodriguez was awarded social security disability (SSDI) in order to establish that he was disabled.  However, courts across the country have held that receipt of such benefits, standing alone, is not enough to survive summary judgment. *See, e.g., Horwitz v. L. Stickley*, Inc., 20 Fed. Appx. 76, 80, 2001 WL 1220511 (2d Cir. 2001) (receiving social security disability benefits does not establish that plaintiff is disabled under ADA); *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 (7th Cir.1996)

is disabled, however, the relevant time period is when the alleged discrimination occurred *See Hawn v. Shoreline Towers Phase I Condominium Ass'n, Inc.*, 2009 WL 691378 at *4 n. 5 (collecting cases). In the present case, the events giving rise to the FHA claims occurred between January and August of 2005. Thus, given the lack of record evidence supporting the contention that Mr. Rodriguez had a hip and back condition in 2005, it is doubtful that Plaintiff can prove that Mr. Rodriguez suffered from such a disability at the relevant time period.[21] Nevertheless, I need not decide this issue because even assuming

---

("Because the ADA's determination of disability and a determination under the Social Security disability system diverge significantly in their respective legal standards and statutory intent, determinations made by the Social Security Administration concerning disability are not dispositive findings for claims arising under the ADA."). Moreover, Mr. Rodriguez's receipt of SSDI for a work related *shoulder injury* that occurred 2001 is immaterial to the issues in this case given that the reasonable accommodation was requested for an unrelated *hip and back* condition. Plaintiff also makes repeated references to a 2007 Letter from Dr. Nunez in an attempt to establish that Mr. Rodriguez is disabled. Dr. Nunez's December 2007 letter was written more than two years after Mr. Rodriguez vacated Project 16, and thus, is insufficient to establish that Mr. Rodriguez was disabled in 2005. Moreover, Dr. Nunez himself, in the very note relied on by Plaintiff states that he has treated Mr. Rodriguez due to elevated blood pressure and cholesterol; states that he is not the best person to judge Mr. Rodriguez's alleged disability in this case since he did not treat Mr. Rodriguez for his alleged hip and back pain; and reaffirms that he does not recall any conversation with Mr. Rodriguez telling him to limit his use of stairs. [*See* DE 97-45].

[21] Moreover, as stated above, an individual is handicapped, for the purposes of the FHA, if he has a physical or mental impairment which substantially limits one or more of such person's major life activities. *See Loren*, 309 F.3d at 1302; 42 U.S.C. § 3602(h) (quotations omitted). In this case, although I do not reach this issue, it bears mentioning that Plaintiff would likely be unable to establish that Mr. Rodriguez's physical impairment substantially impairs a major life activity, especially given Mr. Rodriguez's admission that he went up and down the stairs to his apartment in Project 16 at least six times a week for four years following his alleged workplace accident. *See, e.g., Kelly v. Drexel University*, 94 F.3d 102, 106-07 (3d Cir. 1997) ("[Plaintiff] points to no case in which a court has held that a plaintiff's moderate difficulty walking or climbing stairs sufficed to constitute a 'disability[.]"); (Def. Statement, ¶ 3).

*arguendo* that Mr. Rodriguez is disabled, no reasonable jury could conclude that defendant knew or should have known Mr. Rodriguez was disabled and that HHA knew the requested accommodation was necessary.  In other words, Plaintiff has failed to satisfy the first two prongs required to establish a prima facie discrimination claim for failure to provide a reasonable accommodation under the FHA.[22]

In an attempt to establish that HHA knew of Mr. Rodriguez's disability and the necessity of his requested accommodation, Plaintiff argues that HHA was sufficiently put on notice by way of Mr. Rodriguez's January 21, 2005 letter.  The letter provides as follows:

> "We want to appeal to the decision about the transfer, because we did not realize that we did not see the conditions of the place first ... There is no bathroom downstairs and [Mr. Rodriguez] and I had surgery, we cannot go upstairs each time we need to use the bathroom."

[DE 97-27, p. 3].  Although it is undisputed that HHA did not respond to Mrs. Rodriguez's January 21, 2005 letter, even assuming HHA employees had read the letter, it would have been insufficient to impute knowledge of Mr. Rodriguez's disability and the necessity of the requested accommodation upon HHA.[23]   As in *Hawn*, the letter did not "indicat[e] whether

---

[22] As previously noted, to prevail, a plaintiff must show that: (1) he is disabled or handicapped within the meaning of the FHA, **and that the defendants *knew or should have known* of that fact**; (2) **that the defendants knew that an accommodation was *necessary* to afford him equal opportunity to use and enjoy the dwelling**; (3) such an accommodation is reasonable; and (4) the defendant refused to make the requested accommodation. *See Hawn v. Shoreline Towers Phase I Condominium Ass'n, Inc.*, 2009 WL 691378, at *4 (N.D. Fla. 2009), *aff'd, Hawn v. Shoreline Towers Phase 1 Condominium Ass'n, Inc.*, 347 Fed. Appx. 464 (11th Cir. 2009); *See generally Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1218-19 (11th Cir.2008).

[23] I note that to the extent Plaintiff argues that HHA "effectively denied Rodriguez's request for a 'reasonable accommodation' when [HHA] failed to read and/or process letter ... " this argument is without merit.  This is because the accommodation could not have been

[Mr. Rodriguez's] limitations and difficulties were temporary or permanent, nor did [it] indicate that [the requested accommodation] was '*necessary* to afford [him] equal opportunity to use and enjoy his dwelling[.]'" *Hawn v. Shoreline Towers Phase I Condominium Ass'n, Inc.*, 2009 WL 691378 at *4. Indeed, the letter only contained a vague reference to Mr. Rodriguez's "surgery" and did not describe the nature and extent of his disability. The only evidence in the record of a surgery on or before the relevant time period was Mr. Rodriguez's June 21, 2001 emergency shoulder surgery resulting from his May 2001 work-related injury. [*See* Rodriguez Decl. ¶ 8]. Clearly, a reference to Mr. Rodriguez's shoulder surgery is insufficient to establish that the requested accommodation – a bathroom on the first floor – was necessary. As the Court in *Hawn* noted, "the duty to make a reasonable accommodation does not simply spring from the fact that the handicapped person wants such an accommodation made. Defendants ... must instead have ... the ability to conduct a meaningful review of the requested accommodation ... ."[24]

---

denied until Mr. Rodriguez vacated the Subject Premises at Project 16, which did not occur until August 31, 2005. *See Radecki v. Joura*, 114 F.3d 115, 116 (8th Cir. 1997) ("We hold the district court erred in limiting its knowledge inquiry to the date defendants sent [the plaintiff] the eviction notice ... In assessing whether and when defendants knew of [the plaintiff's] handicap, the court should have considered the date [the plaintiff] was actually evicted [] as the FHA provides that unlawful discrimination occurs when a dwelling is denied to a renter because of that renter's handicap.") (internal quotations omitted). In this regard, I further note that having concluded that HHA did not have knowledge of Mr. Rodriguez's handicap and the necessity of his accommodation, I need not reach the issue of whether a request was ever in fact denied since Mr. Rodriguez chose to voluntarily leave HHA altogether.

[24] Plaintiff further argues that during the informal hearing held on January 20, 2005 HHA was informed that Mr. Rodriguez had difficulty climbing stairs and needed a unit with a bathroom on the first floor. [DE 129, p. 10]. Regarding this meeting Mr. Rodriguez testified at his deposition that he provided documentation purporting to show that "he was sick." (Pl. Statement, ¶ 13; Rodriguez Dep., p.166:1-6, 1-20). As noted above, however, the Court has searched the record and finds no evidence supporting the contention that Mr.

*See Hawn v. Shoreline Towers Phase I Condominium Ass'n, Inc.*, 2009 WL 691378 at *7 (quoting *Prindable v. Association of Apartment Owners of 2987 Kalakaua*, 304 F.Supp.2d 1245 (D.Hawai'i 2003), *aff'd sub nom. Dubois v. Association of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175 (9th Cir.2006) (internal quotations omitted)).

Plaintiff further points to the eviction action mediation held on June 30, 2005 in an attempt to raise a genuine issue of material fact as to whether HHA knew of Mr. Rodriguez's disability and the necessity of his requested accommodation. Plaintiff argues that at the June 30, 2005 mediation "HHA was directly told of Rodriguez's disability," and that medical documentation substantiating Mr. Rodriguez's alleged disability was provided to HHA. [DE 129, p. 10; Pl. Statement ¶ 28]. The handwritten letter dated June 10, 2005, allegedly provided to HHA at the June 30, 2005 mediation, stated as follows:[25]

> This is to certify that Mr. Miguel A. Rodriguez is my patient since May 1997. His diagnosis (sic) are ... 3) osteoarthritis; 4) depression; 5) chronic shoulder pain; and 6) chronic back pain. He is seen (sic) a pain specialist also he will benefit [from] a stable and relaxed environment.

[DE 97-44]. Dr. Nunez's letter merely stated that, among other ailments, Mr. Rodriguez had chronic back pain and osteoarthritis. However, the letter lacked any explanation as to the extent and nature of Mr. Rodriguez's diagnoses and was devoid of any reference to

---

Rodriguez had difficulty climbing stairs due to a disability in 2005. Thus, I conclude that no reasonable jury could find that unspecific documentation showing Mr. Rodriguez "was sick" is sufficient to establish that he was disabled and that the requested accommodation was necessary.

[25] As previously noted, there is no evidence of record supporting Plaintiff's assertion that "Rodriguez presented [the letter dated June 10, 2005] from Dr. Nunez regarding his medical condition and diagnosis" at the June 30, 2005 mediation. [*See* Pl. Statement, ¶ 28]. Mr. Rodriguez's only testimony in this regard, is that all of his medical documentation was provided to HHA before he moved out of the Subject Premises, but he could not recall when or to whom they were given. (*See* Rodriguez Dep. I 97:1-12; 107:6-14).

his alleged limited ability to climb stairs.[26]  As such, it did not provide a basis from which HHA could determine whether Mr. Rodriguez was disabled and actually needed the requested accommodation.  Similarly, the court in *Hawn* found a doctor's letter diagnosing a patient with "severe panic attacks" and "prescribing a service animal" to be insufficient to establish knowledge of the plaintiff's disability and the necessity of the requested accommodation.  In support of its conclusion, the *Hawn* court noted that the board did not outright deny the plaintiff's request, but instead asked the plaintiff to provide additional documentation and the plaintiff failed to do so.  In this case, it is undisputed that at the June 30, 2005 mediation Mr. Rodriguez was asked to provide medical documentation substantiating his alleged disability and his request for a reasonable accommodation. (Def. Statement, ¶ 28).  To the extent Dr. Nunez's June 10, 2005 letter was provided in response to this inquiry by HHA, it was insufficient.  Moreover, tellingly, instead of requiring additional time to substantiate his alleged disability with adequate medical records, Mr. Rodriguez – while being represented by counsel – chose to abandon his efforts to obtain a reasonable accommodation by settling the state court eviction action and vacating his unit as of August 31, 2005.  Because the evidence of Mr. Rodriguez's alleged disability was insufficient HHA had no meaningful opportunity to consider whether Mr. Rodriguez was in fact disabled and to assess whether the requested accommodation was necessary.  Accordingly, given that Plaintiff has failed to create any genuine issues of material fact as to HHA's knowledge of Mr. Rodriguez's disability and the necessity of the requested accommodation, HHA is entitled to summary judgment.

---

[26] It bears mentioning that the letters found to be insufficient in *Hawn* both indicated that a service animal was medically necessary for the plaintiff.

19

### IV.  Conclusion

In light of all of the foregoing, Plaintiff's claim must fail as a matter of law for failure to establish that HHA knew of Mr. Rodriguez's disability and that the requested accommodation was necessary.  Accordingly, it is hereby

**ORDERED and ADJUDGED** that:

1. HHA's Motion for Summary Judgment **[DE95] is GRANTED**.
2. This case is CLOSED.
3. All pending motions are DENIED as MOOT.

DONE and ORDERED in Chambers in Miami, Florida, this 19th day of April, 2010.

_____
THE HONORABLE ALAN S. GOLD
UNITED STATES DISTRICT JUDGE

cc:
All counsel of record
U.S. Magistrate Judge Chris M. McAliley